UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

UNITED STATES OF AMERICA,          )
                                   )
  PLAINTIFF,                       )        CASE NO. 2:05-CR-118
                                   )
        vs.                        )
                                   )
JASON DAVID-COLEMAN MUSE,          )
                                   )
  DEFENDANT.                       )
_____)


    TRANSCRIPT OF REVOCATION OF SUPERVISED RELEASE PROCEEDINGS
            BEFORE THE HONORABLE ALGENON L. MARBLEY
                  UNITED STATES DISTRICT JUDGE
                  SEPTEMBER 15, 2017; 9:30 A.M.
                       COLUMBUS, OHIO



    APPEARANCES:

    FOR THE PLAINTIFF:
          BENJAMIN C. GLASSMAN
          United States Attorney
          By:  SALVADOR A. DOMINGUEZ
          Assistant United States Attorney
          303 Marconi Boulevard
          Columbus, Ohio  43215

    FOR THE DEFENDANT:
          Office of the Federal Public Defender
          By:  RASHEEDA KHAN
          Assistant Federal Public Defender
          10 West Broad Street
          Columbus, Ohio  43215




                         - - -


        Proceedings recorded by mechanical stenography,
transcript produced by computer.

1    FRIDAY MORNING SESSION

2    SEPTEMBER 15, 2017

3                    - - -

4        THE DEPUTY CLERK:  Criminal case CR2-05-118, United

5    States of America versus Jason David Muse.  Would the defendant

6    please come forward.

7        THE COURT:  Good morning.  Would counsel please

8    identify themselves for the record beginning with counsel for

9    the government.

10       MR. DOMINGUEZ:  Good morning, Your Honor.  Sal

11   Dominguez on behalf of the United States.

12       MS. KHAN:  Good morning, Your Honor.  Rasheeda Khan on

13   behalf of Mr. Jason Coleman Muse.

14       THE COURT:  Mr. Dominguez, what is at issue in this

15   proceeding?

16       MR. DOMINGUEZ:  Your Honor, Mr. Muse is before this

17   Court for a hearing on alleged violation of conditions of

18   supervised release under which he was placed by this Court by a

19   Judgment and Commitment Order dated on or about September 7th,

20   2006.

21       THE COURT:  And what was the -- what's the alleged

22   violation and the factual basis therefore?

23       MR. DOMINGUEZ:  Your Honor, on September 4th of 2013,

24   approximately 18 months or so after Mr. Muse began his period

25   of supervised release, there was an allegation that several

1  shots were fired by a handgun possessed by him following a

2  domestic dispute.

3       Mr. Muse subsequently pled guilty --

4       THE COURT:  Is this the case, Mr. Dominguez, where

5  apparently there was an argument between Mr. Muse's girlfriend

6  and her family which then resulted in him allegedly shooting at

7  members of her family?

8       MR. DOMINGUEZ:  I don't believe it's "allegedly" at

9  this point because he entered a guilty plea January 28th of

10  2014 to a lesser offense, of course, felonious assault without

11  specification before Judge Lynch in the Franklin County Court

12  of Common Pleas.

13       THE COURT:  Okay.  Go ahead.  Is there anything more?

14       MR. DOMINGUEZ:  No, Your Honor.

15       THE COURT:  Ms. Khan, does Mr. Coleman Muse contest

16  the charges, or does he agree?

17       MS. KHAN:  Your Honor, he does agree with the

18  Violation No. 1, the defendant shall not commit another

19  federal, state or local crime.

20       THE COURT:  Okay.  What is the defense position with

21  respect to the disposition of this matter?

22       MS. KHAN:  Your Honor, I understand that the

23  guidelines recommend that there should be a punishment imposed

24  because -- even when the substance of the violation was

25  breaking law.  He's already served a substantial sentence for

1   that.  However, under the circumstances, he served a

2   significant sentence.

3        In addition, this was a family dispute.  This is

4   something that Mr. Muse had shared with his probation officer

5   prior to the incident regarding the concerns, regarding the

6   conflict.  My understanding it was a back-and-forth situation.

7   But nonetheless, Your Honor --

8        THE COURT:  Let me make sure I understand what

9   happened.  So Mr. Coleman Muse's girlfriend was having an

10  argument with her father dealing with child custody issues,

11  right?

12       THE DEFENDANT:  Yes, sir.

13       THE COURT:  And the child at issue was not your child,

14  but was your girlfriend's child.  Is that also right?

15       THE DEFENDANT:  Yes, sir.

16       THE COURT:  And that's when it escalated to violence?

17       THE DEFENDANT:  (Nods head.)

18       THE COURT:  Go ahead.

19       MS. KHAN:  Your Honor, he's ended that relationship

20  with that person.  He no longer has contact with that family.

21  Prior to his finishing up his prison sentence on the state

22  case, he had a plan in place.  His family went to see

23  Mr. Mahler, explained to him he has a place to live, he has a

24  full-time job available to him, and that they were hopeful they

25  would be able to provide a support system so that he could come

1  out and demonstrate that he is capable of being a productive

2  person.  He has no substance abuse issues, Your Honor.

3      I confirmed with his stepfather, who is in the courtroom

4  today, that he does have a full-time job in place.  It would be

5  working for Idle Construction.  He's indicated this is very

6  physical work.  It's digging, wheelbarrowing, shoveling, and

7  that it's an all-day situation where his stepfather would be at

8  the job site as well, to supervise him.  I confirmed with his

9  mother he can live there.  She's also in the courtroom.  Both

10 of them are committed to providing support for him, want him to

11 succeed, want him to be a good parent.  He has two children.

12 He has daily contact with his teenage daughter and another

13 small child I believe is four years old.

14      For those reasons, we believe -- timing is everything

15 here.  He's got the system in place.  We believe that he can

16 succeed and is deserving of the opportunity to succeed after

17 already doing a significant prison sentence.

18      THE COURT:  Has he already completed his four-year

19 sentence?

20      MS. KHAN:  Yes, Your Honor.  I would submit, if the

21 Court believes that an additional sentence or punishment is

22 warranted because of the violation of supervised release, that

23 perhaps he could be on house arrest.  He could be on electronic

24 monitoring for an extended period of time while, at the same

25 time, having an opportunity to take advantage of the

1    significant support system that he has in place now.

2         THE COURT:  Here's what -- before I hear back from

3    Mr. Dominguez, I want to hear from Mr. Coleman Muse.  I want

4    Mr. Muse to tell me why, in a situation that really didn't

5    involve him directly -- it wasn't his baby, it was just his

6    girlfriend; and it was an argument between his girlfriend and

7    her family -- why he resorted to shooting at people?  At some

8    point, someone is going to have to explain to me why the resort

9    to gun violence is the current default position.  I just don't

10   understand that.

11        MS. KHAN:  Your Honor, before I allow him to answer

12   those questions, I would just submit that this was a highly

13   contested case, that he was not charged -- or he was not

14   convicted of the gun spec, and that he had been prepared for

15   trial and ultimately made the decision to enter a guilty plea.

16   I'm not going behind the guilty plea, Your Honor, but I'm

17   saying that what he explains to you might not satisfy the Court

18   and might concern the Court that he's going behind the guilty

19   plea.

20        I would also submit, Your Honor, that at the time he

21   entered that guilty plea, he had been preparing for trial, he

22   had been represented by an attorney who was under indictment

23   for very serious charges and had gone to trial himself only

24   months after he negotiated the plea for Mr. Muse.

25        THE COURT:  Maybe he can tell me something, then.

1    THE DEFENDANT:  Really about my case, it was -- I was

2  with my -- she wasn't my -- I didn't have no kids with her.

3  She -- we had a house together.  We stayed together.  And I was

4  with her I think for like 15 months.  And at the time -- she

5  was molested as a kid.  Her kids was going over there.  That's

6  how it all started.  Her kids was going over there.  I told her

7  not to let her kids go over there.  Her dad molested her as a

8  kid.

9    So they got mad.  She went over there and took her kids.

10  They got mad at her and said, well, you got this dude telling

11  you what to do with the kids.  And they got mad.  It was like

12  back and forth.  They was trying to get me locked up.  They was

13  calling the police on me.  They was doing certain things.  I

14  went and told my PO, which he wasn't there so I told his

15  supervisor they trying to get me locked up.  He told me, I

16  thank you for coming down here to tell me this.

17    When all this happened, when all the allegations

18  happened, they just -- I -- by the time I went to court --

19    MS. KHAN:  I want you to tell them what you learned

20  from the experience before you finish.

21    THE DEFENDANT:  By the time I went to Court, I -- she

22  was going -- they told her she was on probation.  They told her

23  that --

24    MS. KHAN:  I want you to tell him what you learned

25  from the whole situation.

1    THE DEFENDANT:  Okay.  I learned -- as I came up, I

2    learned not to -- just being around -- I went through a hard

3    situation with my family, with her.  I learned -- I left her

4    alone.  I experienced a lot doing four years, and I just -- I

5    got a family now that supports me.  They -- I went -- when I

6    did my first time, I went and got my GED.  I got my personal

7    trainer certificate.  I took parenting classes.  I did

8    everything I could to stay out of prison.  You know what I'm

9    saying?

10    I just learned a lot, like experimenting -- and losing

11    my mother and grandmother in this situation, going through a

12    lot.  I haven't spoke in front of people so I'm a little bit

13    nervous.  I'm trying to do my best to stay with my family,

14    support my family.  My son needs me.  My daughter needs me.

15    And I'm asking --

16    THE COURT:  Let me explain my concern.  And I

17    understand what you're saying and you're to be commended for

18    taking steps to better yourself.  But the Court's concern is

19    with the escalation of violence.  So I'm not going to press you

20    to explain the shooting or the shooting at or pursuit of

21    somebody missing -- someone missed somebody else, and then a

22    bullet was lodged in a car that had people that included

23    children.

24    Not only here, not only just in my court, Mr. Coleman

25    Muse, but just around the country everyone seems to default to

1    gun violence, shooting at people.  That seems to be all of the

2    rage these days.  And it's bad enough that you're shooting at

3    each other, but then it's worse that innocent victims are

4    sometimes hit.

5         And so your lawyer is asking me to take a chance because

6    you are before me -- you caught a cocaine case.  But this other

7    case -- there was no violence in the cocaine case.  This other

8    case involved somebody getting shot at.  I want to know why it

9    is that I should ignore the facts of that case which involves

10   some violence, or how you have had an epiphany that you no

11   longer default to gun violence or to violence at all, that you

12   now know how to resolve your issues, even if threatened.  If I

13   understand the fact of the underlying violation, the case

14   before Judge Lynch in the state court, you weren't being

15   threatened directly.  Nobody had pulled a gun on you.  So it

16   wasn't a self-defense case.  It was a case that just escalated

17   and gun violence was the default.

18        I'm trying desperately to understand why there is an

19   escalation, why everybody decides instead of arguing, let's

20   just shoot at each other.

21        Do you understand what I'm getting at, Mr. Coleman Muse?

22          THE DEFENDANT:  I understand what you're saying, like

23   you shouldn't resort to violence.  I tried my best to go to my

24   probation officer to help me.  It's going to change because of

25   my family and I care about my family.  I care about my son,

1  that they provide for me.  And I'm asking if I get another

2  chance, I'll show you I'll never be in this courtroom, and I'll

3  learn to turn the other cheek.  If anything happens -- I'll

4  report it if anything happens.  I'll show you I'll stay out of

5  this courtroom and keep a job and be there to support my

6  family.

7           THE COURT:  Do you have any children, Mr. Coleman

8  Muse?

9           THE DEFENDANT:  I have two.

10          THE COURT:  How old are they?

11          THE DEFENDANT:  One is 16 and one is four.

12          THE COURT:  Do either of them live with you?

13          THE DEFENDANT:  When I was out, my daughter, we had

14  back and forth.  She'd get the week and I'd get the weekend.

15          THE COURT:  The woman who has the four-year-old by you

16  is not the same woman who was involved in this shooting

17  incident?

18          THE DEFENDANT:  No, sir.

19          THE COURT:  That's a different one?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  And it's not the same woman by whom you

22  have the 16-year-old?

23          THE DEFENDANT:  No, sir.

24          THE COURT:  So before you went to prison, you were

25  living with the mother of the four-year-old?

1  THE DEFENDANT: Yes, sir. I was living with the one I

2  caught my case with. I was living with the one I caught my

3  case with, but we was back and forth with the four-year-old. I

4  was back and forth with the four-year-old.

5  THE COURT: Do you have anything else you wish to say,

6  either you or you, Ms. Khan?

7  MS. KHAN: Your Honor, I would point out again that

8  his parents are here. And I believe his mother would like to

9  address the Court if the Court has time.

10  THE COURT: Please.

11  Please state your name and spell your last name for the

12  record.

13  MS. LUCKETT: My name is Kimberly Luckett,

14  L-U-C-K-E-T-T.

15  THE COURT: Go ahead, Ms. Luckett.

16  MS. LUCKETT: Sir, my son really has changed his life.

17  He has become a Christian. I have been a Christian my whole

18  life. He's given his life to God. I understand -- he's always

19  known God. We were raised that way.

20  I understand your situation. I know you don't know the

21  whole story of how he went to jail, and it seems compelling. I

22  know I can't explain because I'm not his lawyer, and I'm not

23  trying to say anything. But he was put in a situation that

24  they were looking for him.

25  MS. KHAN: You're going to tell him how you're going

1  to help him make sure that doesn't happen again.  Let's forget

2  that.

3          MS. LUCKETT:  Okay.  Yes.  But I am here to make sure

4  he has direction.  He can stay in my home with me and my

5  husband.  I work every day.  I've been on my job for many

6  years.  I've been in the same business for 17 years.  I never

7  miss a day of work.  I've never been in trouble.  My husband

8  goes to work every day.  We are here to get him on the right

9  path, to make sure -- if I did not feel this way -- and I have

10  six children, sir.  If I did not feel this way, I would not be

11  in this court.  And my children will tell you, if I don't

12  believe and trust in you, I cannot back you up.  I can't.

13  That's who I am.  God built me that way.  I'm for right and for

14  good and for doing the right thing.  And I am here to make sure

15  that he is on the straight and narrow.

16          He has a child that needs him, that needs a father

17  figure in his life.  You know, he needs to -- you know, he has

18  to prove that to you; I know that.  But I know that we are here

19  to support him in every single step every way.  I went to work

20  this morning and came here, to be here.  I told my boss I have

21  to be here with my son to support him in this courtroom.  I

22  would make sure he does everything that is told by this Court,

23  everything.

24          I just want you to know we have -- he has the backing

25  that he needs right now, the support that he needs to get

1    through anything right now, that if we can get him -- however

2    you want to do it, house arrest, whatever.  He can be right

3    there in my house, whatever.  Anything you need from me, I am

4    willing to do, and my family is too.

5            THE COURT:  Thank you, Ms. Luckett.  Do you have

6    anything further?

7            MS. LUCKETT:  No.

8            THE COURT:  Anything further you want to tell the

9    Court, please feel free to do so.

10           MS. LUCKETT:  I just feel like he shouldn't be in this

11   situation.  I feel like he did his time.  The situation -- I

12   know how it came out, but you don't know the whole story.

13           THE COURT:  I'm sure I don't, Ms. Luckett.  What I do

14   know is that your son pleaded guilty.  There was a gun involved

15   and people -- and that gun was discharged.

16           My grandmother used to tell me, Ms. Luckett, that a

17   stray bullet bears no name.  It's one thing if you're in a war

18   zone and people are shooting at each other, a war between

19   nation-states, or between rogue nations and a nation-state, or

20   between warring factions.  That's bad enough.  But war on our

21   streets is even worse.

22           What's even worse -- because I've presided over those

23   cases where innocent people were killed because somebody who

24   shouldn't have been shooting at somebody else was just a bad

25   shot.  And then the innocent people oftentimes are little

1    children like his four-year-old.  And so I understand your

2    position, and it was wrong place, wrong time.  But what

3    concerns the Court is that the default position, when

4    everything else goes wrong, is I'm going to pull out my gun and

5    I'm going to shoot somebody.  That's what concerns me.  Because

6    today it could be somebody got missed, but tomorrow it could be

7    someone was hit and some innocent child.

8         You have several children.  If none of your children has

9    been shot and killed, you're fortunate.  And that's unfortunate

10   for me to say, that we live in communities where you're lucky

11   if your child grows up not having been shot.  And so, when

12   someone comes to me who has done this, I have to think hard and

13   long about it, not because they were put in bad positions --

14   Ms. Luckett, when we go through this life, we're all put in bad

15   positions from time to time.

16        MS. LUCKETT:  Yes, sir.

17        THE COURT:  But when we do, all of us don't take out

18   guns and shoot at people.  That's what concerns the Court.

19        MS. LUCKETT:  Yes, sir.

20      May I ask his lawyer a question?

21        THE COURT:  Yes, ma'am.

22     (Counsel and Ms. Luckett confer.)

23        THE COURT:  I just wanted to share with you why I have

24   certain concerns.

25        MS. LUCKETT:  And I do understand that, sir.  I just

1    wanted you to know that we are here to support him in any way

2    that we possibly can, to get him -- to make sure he is doing

3    the right thing.

4              THE COURT:  Thank you, Ms. Luckett.

5              MS. LUCKETT:  Thank you.

6              THE COURT:  Is there anyone else?

7              MS. KHAN:  No, Your Honor.  I would also add that if

8    the Court determines that Mr. Muse does need to serve a prison

9    sentence beyond the sentence that he's already served in state

10   court, that a significant number of his criminal history points

11   occurred from age 15 to 17 because the original offense

12   occurred when he was so young.  While I understand that this

13   was a terrible offense --

14             THE COURT:  Is he working now?

15             MS. KHAN:  He never got out.

16             THE COURT:  Mr. Dominguez?

17             MS. KHAN:  Your Honor --

18             THE COURT:  You have some more?

19             MS. KHAN:  Yes.  Just with respect to the probation

20   officer's finding the offense was a crime of violence.  We

21   would object to the finding of crime of violence and ask --

22             THE COURT:  You mean the crime to which he pleaded was

23   not a crime of violence.

24             MS. KHAN:  Yes.

25             THE COURT:  But the underlying facts which are not

1   disputed do bespeak of a crime of violence. Am I correct?

2           MS. KHAN: I would agree it was a violent situation,

3   Your Honor.

4           THE COURT: That's fine. Do you have anything else?

5           MS. KHAN: Your Honor, I just think that timing is

6   very important. And while certainly this man faces a

7   significant punishment for violation of the supervised

8   release --

9           THE COURT: I want you to know that I understand that

10   he has served his time for that. This is just whether he's

11   going to serve some additional time for breaching the terms of

12   his supervised release. So I get it.

13           MS. KHAN: It's just that I'm not sure in three years,

14   if he's doing the time that the probation officer is

15   recommending, that that support system is going to be in place.

16   I and this Court and his family certainly want him to succeed,

17   and he is in a position to succeed. That's all, Your Honor.

18           THE COURT: Thank you.

19       Mr. Dominguez, what is your position on behalf of the

20   government?

21           MR. DOMINGUEZ: Your Honor, there's no love like the

22   love that a mother has for her son. And I would never endeavor

23   to disparage any comments made by Ms. Luckett on behalf of her

24   son who she loves dearly.

25           THE COURT: I understand.

1     MR. DOMINGUEZ:  But the United States believes that

2  love has spawned many years, and for many years she has had

3  that support for him.  Yet and still, Mr. Muse has decided to

4  live a life of crime.  If you look at his criminal history

5  category, it's a Criminal History Category VI.  And Mr. Muse

6  went to trial and we tried that case and he was convicted of a

7  cocaine-based related offense, but there was a gun at his feet.

8  The jury just found he did not possess it in furtherance of a

9  drug trafficking crime.  That's a matter of record.

10     I'm here on behalf of the community.  As the Court

11  pointed out, and I --

12     THE COURT:  Go back for a minute.  What did you say

13  about there was a gun?

14     MR. DOMINGUEZ:  There was, in fact, a gun.

15     THE COURT:  This case was tried before Judge Holschuh,

16  right?

17     MR. DOMINGUEZ:  Yes.

18     THE COURT:  And there was a gun.

19     MR. DOMINGUEZ:  Jury trial.  The charge was possession

20  in furtherance of a drug trafficking crime.  They acquitted on

21  that offense, but they convicted on the drug offense, and they

22  were both in the same car.

23     THE COURT:  I got you.  Thank you.

24     MR. DOMINGUEZ:  And Mr. Muse knows, based on his prior

25  convictions prior to that trial and the conviction in federal

1  court, that he is not entitled to possess a gun or bullets.

2  And as the Court is aware, a bullet was found in his possession

3  that matched the casings that were recovered from the shooting

4  offense of September 4, 2013.

5          The government has concerns, Your Honor, because -- and

6  I quote from the violation report: During the physical

7  confrontation, Ms. Coffman's brothers reportedly intervened,

8  and it is alleged that Mr. Muse fired a shot at one of the

9  brothers.

10         This is not the father who allegedly had molested the

11  girlfriend and could potentially molest the kids.  These were

12  the brothers.

13         The following sentence:  It was also reported that

14  Mr. Muse chased the brother outside the residence, presumably

15  after he had instilled fear into that brother by shooting the

16  first time, fired another shot that struck a vehicle which was

17  occupied by adults and children.

18         Now, Ms. Khan, on behalf of Mr. Muse, rightly points out

19  that Mr. Muse has served time in state court or state prison

20  for the sentence he received in Franklin County Court of Common

21  Pleas because the State of Ohio vindicated their interest for

22  what he did in the community.

23         But, Your Honor, defendants must follow the rules of

24  supervised release under which they're placed by this Court.

25  And under those rules and under the law, he cannot possess a

firearm or a bullet.  Mr. Muse must atone for this conduct

because it is serious, and we believe that the recommended

disposition that the probation officer has given this Court is

sound and fair considering what has happened in this case.

Thank you.

THE COURT:  Thank you, Mr. Dominguez.  Mr. Mahler.

THE PROBATION OFFICER:  Good morning, Your Honor.

THE COURT:  Anything that you wish to add, especially

in light of the other comments that were made by Ms. Khan and

Mr. Coleman Muse and Ms. Luckett?

THE PROBATION OFFICER:  No, Your Honor.  Mr. Dominguez

sums up where I stand as well.  From my perspective, when this

incident took place, it was very alarming.  Obviously, we --

Mr. Muse did come to me and indicate the tensions that were

going about.  I tried to counsel him into how best to handle

this.  Certainly, I didn't expect for it to become this

violent.  I told him to notify the proper authorities in regard

to that.  At the end of the day, I -- there's nothing I could

do or say to stop this.  And unfortunately, we find ourselves

in this situation.

I believe that being on supervised release carries a lot

of responsibilities.  And the violent nature of this crime,

again, was extremely concerning at the time.  That's why I

acted before a conviction.  The officer at the time was willing

to come in and testify.  And now saying all that, I realize he

1   has done his state time and I recognize that, but I still feel

2   there needs to be some sort of sanction as opposed to this.

3        My hope is that after a period of incarceration, those

4   opportunities are still available to him.  And certainly, if

5   the Court wishes to put him on a new term of supervised

6   release, he will be granted halfway house time, I would expect,

7   and we can start instilling those work and family-type ties to

8   make him successful in the community again.

9        At this point, I think this was a very serious matter.

10  I had serious concerns about this.  In looking back four years,

11  it kind of brings it back to light, my feelings at the time.

12       THE COURT:  Could I see you at sidebar, Mr. Mahler?

13    (Thereupon, Court and Mr. Mahler conferred out of the

14  hearing of open court and off the record.)

15       MS. KHAN:  Your Honor, if I may make a couple more

16  comments in response to what has been said.

17       THE COURT:  Certainly, you may.

18       MS. KHAN:  I would submit the government describes

19  somebody that had the benefit of a stable family life and he on

20  his own just decided to disrespect the law.  In fact, the PSI

21  describes something quite different.  He was raised by his

22  grandmother.  His mother who came before you had significant

23  substance abuse issues.  He said most of his childhood was

24  living in crack houses with his own mother.  While she has a

25  stable situation now for the last 16 years, the substantial

1   part of that he has been in prison.  So he has not had the

2   benefit of an ideal childhood that we would expect somebody to

3   learn how to manage family disputes.

4        I would also ask the Court -- what concerns me about the

5   statements made regarding the offense conduct is that he did

6   not admit to the gun specification.  As you saw from his

7   mother, there's still a dispute as to what actually occurred.

8   I'm not going behind the guilty plea, Your Honor, but what

9   concerns me is the -- if the Court is choosing to rely on the

10  allegations from a complaint or from the other side of the

11  situation -- I don't know what the statement of facts was

12  submitted to the Court at the time of the guilty plea, but I'm

13  pretty confident it wasn't to the scope that was explained to

14  the Court earlier.

15       Nonetheless, it's serious, Your Honor.

16       THE COURT:  What I do know is that there were

17  allegations that there was gunshots and there were allegations

18  that Mr. Coleman Muse had a gun.  He pleaded guilty to

19  felonious assault without specification, a felony of the second

20  degree.

21       MS. KHAN:  Yes, Your Honor.

22       THE COURT:  Do you know what the facts to which he

23  pled guilty were?

24       MS. KHAN:  That's my concern.  I do not know.  I do

25  not know.

1    THE COURT:  Do you, Mr. Mahler?

2    THE PROBATION OFFICER:  Your Honor, no, I don't have

3    those with me.  I don't know if I was provided it from Franklin

4    County.

5    MR. DOMINGUEZ:  If that's important to the Court, we

6    can order the transcript.

7    THE COURT:  Ms. Clark can print out the element sheet

8    for us and I can have it in front of me so then I'll know that

9    to which Mr. Coleman Muse pleaded guilty.

10    But it does concern me.  I mean, I'll wait and see what

11    the elements are, but we also -- and he was acquitted of, I

12    guess, having the gun in the underlying Holschuh case although

13    there was a gun in the car.

14    MR. DOMINGUEZ:  In furtherance.  There was in fact,

15    Your Honor.

16    THE COURT:  It concerns me that even if -- let's say

17    he didn't discharge the weapon, but there was a weapon present.

18    The gun wasn't in furtherance of his cocaine dealing, but there

19    was a weapon present.  Now, one of the things that they do when

20    they bring us onto the district court -- maybe unlike the court

21    of appeals, but on the district court we don't have to jettison

22    our common sense.  One thing is for certain, that this has all

23    of the markings -- this is a white, feathered animal with

24    webbed, orange feet and it quacks.  So somebody can call it a

25    bluebird if they want to, but I'm calling it a duck.  This

1   looks eerily like a duck.  I'm concerned about this.

2       Now, I will tell you also that I think that Mr. Coleman

3   Muse has served time and he has paid for the underlying

4   offense.  But if I were to give him no time, then that

5   eviscerates supervised release.  So you can get another case,

6   you can be involved in conduct somewhat akin to the conduct

7   that got you in prison in the first place, but there's no

8   consequence because you kind of have had an epiphany.  As you

9   know, Fridays in this courtroom is epiphany Friday.  Everybody

10   has seen the light.  They've seen the way.  Everyone.  But I'm

11   not so certain that they have, and I want supervised release to

12   have some teeth.

13       I don't have the elements.  I just have the --

14   Mr. Dominguez, is it possible that you could get the elements

15   from the state prosecutors?  Would they have those someplace

16   accessible?  Or would that take --

17       MR. DOMINGUEZ:  I don't think I can do it within five

18   minutes, but I could certainly do it.

19       THE COURT:  Could you do it by the end of the criminal

20   calendar, you think?

21       MR. DOMINGUEZ:  I would give it my best try.

22       THE COURT:  What I'm going to do is move this to the

23   end of the calendar to see if we can get the elements.  You all

24   can work on it on parallel tracks.  You can see what you can

25   find out and Mr. Dominguez -- Ms. Khan, and Mr. Dominguez can

1  do likewise, and Mr. Mahler can help, because you raise an

2  interesting point.

3      I'm not relying on unindicted conduct, but those are

4  facts -- he's pleaded to some facts.  I want to know what the

5  facts are to which he has pleaded in this case where someone

6  was shot at.  Because it doesn't seem that they're saying that

7  either the -- his girlfriend was the shooter or the father was

8  the shooter, or either of the brothers who were shot at were

9  the shooters.  So that leaves Mr. Coleman Muse.  Maybe it was

10  one of those guns had discharged accidentally.  If that's the

11  case, maybe that will be in the statement of facts.  We'll see.

12  We can proceed from there.

13      But that's -- so I'm going to move this to the back of

14  the calendar and then we'll make our record properly.

15      MR. DOMINGUEZ:  Your Honor, if all else fails, we can

16  continue the sentencing hearing.  I can bring in the officers.

17  This is a preponderance of the evidence standard.  It's not

18  proof beyond a reasonable doubt.  We can re-litigate this, as

19  far as I'm concerned.

20      THE COURT:  Maybe we can find the elements or some

21  other way we can get it today so we can dispose of this while

22  we have everyone here, including Mr. Coleman Muse's family.  I

23  don't want them to have to come back.  This will just be

24  adjourned to the end of the calendar.

25      (Recess taken.)

1      THE DEPUTY CLERK:  Recalling criminal case CR2-05-118,

2   United States of America versus Jason Muse.  Would the

3   defendant please come forward.

4      THE COURT:  I understand that Mr. Dominguez now has

5   the elements and has information as to what the defendant,

6   Mr. Coleman Muse, pleaded to.  I'm going to have you make that

7   a part of the record.

8      MR. DOMINGUEZ:  Thank you, Your Honor.  May it please

9   the Court, in the interim, I was able to have a conversation

10   with the chief firearms prosecutor, Mr. Gripshover, at the

11   Franklin County Prosecutor's Office who looked up the case and

12   advised me that Mr. Muse, in fact, pled guilty to Count 1 of

13   the indictment which charged him with felonious assault and

14   which charged him by way of the elements with causing or

15   attempting to cause physical, bodily harm to another through

16   the use of a deadly weapon.  And he, in fact, did not plead

17   guilty to the enhanced penalty, the "with specification," if

18   you will, which is an enhanced penalty for the gun itself,

19   mandatory sentencing, but he did plead guilty to the felonious

20   assault.  And that was the offense to which he was sentenced by

21   Judge Lynch.

22      THE COURT:  Thank you for that quick turnaround, your

23   assiduous work, Mr. Dominguez.

24      Ms. Khan?

25      MS. KHAN:  Just to clarify that he pled guilty to

1  2903.11(A)(2).

2          MR. DOMINGUEZ:  That would be (A)(1).  (A)(2) is when

3  it refers to HIV, I believe, and the other pieces.  It wasn't

4  specified as what subsection, but it was a deadly weapon --

5  cause or attempt to cause physical harm to another through the

6  use of a deadly weapon.

7          MS. KHAN:  And just to be clear, that's the language

8  that was in the indictment?

9          MR. DOMINGUEZ:  Yes, it was.

10         MS. KHAN:  Your Honor, if I could have a moment with

11 Mr. Dominguez?

12         THE COURT:  Yes, you may, certainly.

13    (Counsel confer.)

14         MS. KHAN:  Thank you, Your Honor.  That's fine.  We

15 have no objection to that information.

16         THE COURT:  Unless Counsel has some additional

17 information or additional comments, Mr. Muse, do you have

18 anything additional that you wish to add?

19         THE DEFENDANT:  I would just like to add that I

20 know -- I know that what I copped out to, and I know -- I know

21 I changed.  And I'm asking that you give me the chance to show

22 you that I changed, to show my community, to show my family, to

23 show my kids that I changed.  And I'll do anything that I need

24 to do to make that happen.  That's all basically what I got to

25 say, Your Honor.

1      THE COURT:  I'm going to state the sentence I intend

2   to impose, but Counsel will have an opportunity to make any

3   legal objection before the sentence actually is imposed.

4      The Court finds that you have revoked the terms of your

5   supervised release.  As a result of that, the Court is going to

6   sentence you to a term of 12 months imprisonment with the

7   Bureau of Prisons.  I'm going to sentence you to an additional

8   three years of supervised release under the same terms as

9   previously entered with the additional term that you are to do

10  six months at a halfway house upon your completion of your

11  sentence and as a part of your supervised release.

12     While you're in the custody of the Bureau of Prisons,

13  the Court is going to direct that you undergo psychiatric

14  and/or psychological counseling to deal with anger management

15  issues.  And my directive to the BOP will be that you are able

16  to deal with these anger management issues so that in the event

17  that you become angry, a weapon will not be your default

18  position.  I can't emphasize to you enough, Mr. Coleman Muse,

19  how you need to adopt a life style where weapons are not in

20  your orbit.  When you were convicted with Judge Holschuh, there

21  was a weapon in the car.  Here there was a weapon involved.

22  Weapons seem to just be around you.

23     The problem that's going to arise is one of two or three

24  things.  One, the next time someone is going to get shot,

25  actually.  And it may be, if you continue to be the default

1  person, who knows, the next time you may be the shooter and

2  then you're looking at even a more significant period of

3  imprisonment.  Two, what could happen is what almost happened

4  in this case where innocent bystanders, adults and children in

5  a vehicle, could have gotten shot.  Or three, and maybe worse

6  for you, you could get shot.

7       How old are you, Mr. Coleman Muse?

8       THE DEFENDANT:  I'll be 32 in like 20 days.

9       THE COURT:  You ever daydreamed about how old you

10  would be when you died?

11       THE DEFENDANT:  Not really, sir.

12       THE COURT:  You ever thought about how long you would

13  live?

14       THE DEFENDANT:  I want to live till I'm 90.

15       THE COURT:  Okay.  That's a good number.  That's a

16  reasonable number.  And people are living into their 80s and

17  90s if you take reasonably good care of yourself.  Like the old

18  joke, if I would have known that I was going to live this long,

19  I would have taken better care of myself as a young person.

20  You're a young person now so you don't have to tell that joke

21  in 60 years.  But you aren't going to live another 60 if you

22  keep guns in your orbit.  Those are not usually a good

23  prescription for a long and healthy life, unless you're a

24  policeman or you're in an occupation where you have to carry a

25  gun.  And you aren't in that occupation, nor, given your

1  background and criminal history, will you be in an occupation

2  where you'll be legally carrying a gun.

3       So the best thing for you to do is to just give them up.

4  Give them up because you'll likely live a long, healthy and

5  productive life if you abandon weapons and violence, but not so

6  much so if you don't.

7       Are there any objections to the sentence as stated,

8  Ms. Khan?

9       MS. KHAN:  There are none, Your Honor.  However, I

10 would ask the Court to entertain giving him a year and a day

11 sentence with the hopes that he can finish that sentence and

12 start working.

13      THE COURT:  Any objection to that, Mr. Dominguez?

14      MR. DOMINGUEZ:  No, Your Honor.

15      THE COURT:  All right.  You persuaded me, Ms. Khan.

16 It will be a year and a day.  Anything else?

17      MS. KHAN:  No, Your Honor.

18      THE COURT:  Mr. Dominguez, any objection from the

19 government?

20      MR. DOMINGUEZ:  No, Your Honor.

21      THE COURT:  There being no objections, the sentence as

22 stated will be imposed.

23      Mr. Coleman Muse, you can appeal this sentence.  If you

24 cannot afford an appeal, you have the right to apply for leave

25 to file an appeal *in forma pauperis*, which means without the

1  payment of any cost or expense to you.  If that application is

2  granted, the Clerk of Court will prepare or file a notice of

3  appeal on your behalf.  Any such notice of appeal must be filed

4  within fourteen days of the time that I enter judgment on your

5  sentence.  Do you wish the Court to direct the clerk's office

6  to prepare or file a notice of appeal on your behalf?

7            THE DEFENDANT:  Yes, sir.

8            THE COURT:  You want to appeal this sentence?

9            THE DEFENDANT:  Yes, Your Honor.

10            THE COURT:  All right.  Ms. Khan, would you talk to

11  Ms. Clark about --

12            MS. KHAN:  I can take care of that, Your Honor.

13            THE COURT:  Is there anything further from the

14  defense, Ms. Khan?

15            MS. KHAN:  No, Your Honor.

16            THE COURT:  Anything further from the government?

17            MR. DOMINGUEZ:  No, thank you, Your Honor.

18            THE COURT:  Thank you, Ms. Dominguez, Ms. Khan.  This

19  matter is adjourned.

20                        - - -

21

22

23

24

25

1                    C E R T I F I C A T E

2

3           I, Shawna J. Evans, do hereby certify that the

4    foregoing is a true and correct transcript of the proceedings

5    before the Honorable Algenon L. Marbley, Judge, in the United

6    States District Court, Southern District of Ohio, Eastern

7    Division, on the date indicated, reported by me in shorthand

8    and transcribed by me or under my supervision.

9

10

11                              s/Shawna J. Evans_____
                                Shawna J. Evans, RMR, CRR
12                              Official Federal Court Reporter

13

14                              January 17, 2018

15

16

17

18

19

20

21

22

23

24

25